**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No. ________________

**7-ELEVEN, INC.**,

Plaintiff,

v.

**NOAD, INC. and MERON TECLEBERHAN**,

Defendants.

---

# COMPLAINT

---

Plaintiff 7-Eleven, Inc. ("**7-Eleven**") sues Defendants Noad, Inc. ("**Noad"**) and Meron Tecleberhan ("**Ms. Tecleberhan**") and alleges:

## Parties

1. 7-Eleven is a corporation organized and existing under the laws of the state of Texas with its principal place of business in Irving, Texas.

2. Noad is a corporation organized and existing under the laws of the State of Colorado with its principal place of business in Aurora, Colorado.

3. Ms. Tecleberhan is an individual residing in and a citizen of Arapahoe County, Colorado.

## Jurisdiction and Venue

4. Subject matter jurisdiction in this matter is founded upon 28 U.S.C. § 1332(a) in that this is a civil action where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this District.

## 7-Eleven® Franchising

6. 7-Eleven is an operator and franchisor of convenience store retail businesses. 7-Eleven has developed methods and procedures, called a "system," used in the operation of convenience store businesses.

7. To identify the source, origin, and sponsorship of 7-Eleven® convenience stores and the services they offer, and to distinguish its convenience stores and associated products and services from those offered and sold by others, 7-Eleven has extensively used trademarks and service marks (the "**7-Eleven Marks**").

8. Through written franchise agreements, 7-Eleven licenses the use of the 7-Eleven Marks and its system of operating convenience stores to others, requiring them to operate uniformly and in accordance with 7-Eleven's specifications in order to protect 7-Eleven's image and brand.

9. In exchange, a 7-Eleven® franchisee must pay to 7-Eleven a defined percentage of its gross profit (net sales less cost of goods sold), called the 7-Eleven Charge.

10. Other salient features of the 7-Eleven® franchise system include:

A. <u>The Open Account</u>: 7-Eleven extends financing to its franchisees for use in the operation of franchised stores. The amount financed by 7-Eleven and the balance due from its franchisee is maintained in an account defined in the franchise agreement as the "**Open Account**." Essentially, the Open Account is a running

working capital account that carries the outstanding balance that 7-Eleven has loaned to the franchisee. In exchange for the financing provided by 7-Eleven, the franchisee grants a security interest to 7-Eleven in, among other things, the store's inventory and proceeds.

B. Retail Information Systems: 7-Eleven® franchisees must use a proprietary Retail Information System computer system and software having various point-of-sale, inventory management, and back-office functions. Through this Retail Information System, a franchisee reports virtually all store transactions to 7-Eleven, including sales, inventory acquisitions and adjustments, payroll, etc.

C. Inventory Reporting & Accounting: A franchisee can finance its purchase of store inventory through the Open Account or purchase inventory with cash. In either instance, the franchisee is obligated to report the inventory transaction and submit the related invoice to 7-Eleven.

D. Cash Reports: 7-Eleven® franchisees must prepare and transmit to 7-Eleven a daily cash report ("**Cash Report**"). Among other things, the Cash Report sets forth the daily sales and whether those sales were for cash or credit. The Cash Report also accounts for deductions from cash receipts that affect the daily deposit, such as a franchisee's cash payment to a vendor to acquire merchandise for sale in the store.

E. Daily Deposit: The cash receipts of the franchise business must be deposited into a bank account controlled by 7-Eleven. The Cash Report is a critical component of balancing the Store's transactions and ensuring the bank deposit amount equals the total cash receipts and other cash transactions conducted by the Store.

F. Minimum Net Worth: Most 7-Eleven® franchised stores must maintain a "Minimum Net Worth" of $10,000 or $15,000 depending on the date of their franchise agreement. A franchisee's "**Net Worth**" is essentially the sum total of its assets minus its liabilities. The Minimum Net Worth requirement is intended to protect 7-Eleven's investment in the store, its exposure for the Open Account, and to assure that 7-Eleven® franchisees are financially vested in the operation of their stores. A franchisee who contributes cash to increase the Store's Net Worth reflects that increase on the Cash Report via a "paid-in capital" contribution.

G. Monthly Financials: 7-Eleven prepares monthly financial reports called "Financial Summaries" for each store from its bookkeeping records that accumulates and sorts the information reported to it concerning the franchisee's store operations, such as sales, expenses, inventory acquisitions, and paid-in capital contributions. The Financial Summaries include, among other things, an income statement, balance sheet, and calculation of the Open Account balance and Net Worth calculated in accordance with the provisions of the franchise agreement.

## The Franchise Agreement

11. On September 27, 2018, Noad and 7-Eleven entered into a Franchise Agreement (the "**Franchise Agreement**") pursuant to which 7-Eleven granted Noad a franchise to operate a 7-Eleven store located at 15553 East Mississippi Street in Aurora, Colorado 80017 (the "**Store**"). A copy of the Franchise Agreement is attached as **Exhibit A.**

12. Ms. Tecleberhan, as the sole owner of Noad, executed a Principals' Guaranty Agreement (the "**Guaranty**"), guaranteeing the payment and performance of Noad's obligations under the Franchise Agreement. A copy of the Guaranty is included in the document titled "Entity Franchisee Amendment to Franchise Agreement" that is appended to the Franchise Agreement. *See* Ex. A at 264-72.

13. Through the Open Account described above, 7-Eleven provided financing to Noad, including financing for the Store's inventory, payroll, and other operating expenses.

14. Noad agreed in Sections 28(b) and 28(c) of the Franchise Agreement that, upon termination or expiration of the Franchise Agreement, 7-Eleven would undertake accounting processes to close out the parties' accounts and arrive at a final balance owing. *See id.* at 33.

15. In Section 28(c), Noad promised to pay immediately and in full any balance due to 7-Eleven as determined by the account close out process and upon delivery of the Store's final Financial Summaries. *Id.*

## Noad's Termination of the Franchise Agreement

16. Beginning in or around January of 2024, Noad exhibited a pattern of financial violations of the franchise agreement, including a failure to maintain the Minimum Net Worth required and failure to make deposits of Cash Receipts.

17. By April of 2024, Noad was in equity deficit (an excess of liabilities, including the Open Account balance) of more than $65,000, meaning Noad was in violation of the Minimum Net Worth obligation described in paragraph 10(F) above. In addition, during April 2024, Noad failed to make several required bank deposits of the Store's cash receipts.

18. On April 15, 2024, Noad notified 7-Eleven in writing that it was voluntarily terminating the Franchise Agreement effective immediately.

19. 7-Eleven franchisees are permitted to unilaterally terminate the Franchise Agreement, subject to the conditions of Section 27 thereof.

20. Upon receipt of Noad's notice of voluntary termination, 7-Eleven commenced the close out process by an audit of the Store's inventory beginning on or around April 17, 2024.

**<u>Defendants' Failure To Pay The Open Account Balance</u>**

21. Following the Franchise Agreement's termination, 7-Eleven determined through the account close out process described in Sections 28(b) and 28(c) of the Franchise Agreement that the balance owing from Noad to 7-Eleven on the Open Account was $166,113.91 and delivered final Financial Summaries and a Final Settlement Statement demanding payment on or around August 14, 2024.

22. Notwithstanding Noad's agreement in Section 28(c) of the Franchise Agreement to immediately pay any debit balance on the Open Account and 7-Eleven's demand for payment, neither Noad nor Ms. Tecleberhan have paid the amount owed to 7-Eleven.

23. 7-Eleven has at all times complied with and performed its obligations under the Franchise Agreement.

24. All conditions precedent to bringing this suit have occurred, have been satisfied, or have been waived.

**COUNT I - BREACH OF CONTRACT**

25. 7-Eleven repeats and realleges paragraphs 1 through 24 above.

26. In the Franchise Agreement, Noad promised, among other things, to immediately pay the Open Account balance upon 7-Eleven's delivery of the Final Financial Summaries

27. Noad violated the Franchise Agreement by failing to pay the Open Account balance when due.

28. Noad's violation of the Franchise Agreement has caused 7-Eleven to suffer money damages in at least the amount of $166,113.91.

**COUNT II – BREACH OF GUARANTY**

29. 7-Eleven realleges paragraphs 1 through 24 and 26 through 28 above.

30. Under the Guaranty, Ms. Tecleberhan unconditionally and absolutely guaranteed the prompt and full payment of all liabilities of Noad and the prompt and full performance of all obligations of Noad under the Franchise Agreement.

31. Ms. Tecleberhan breached the Guaranty by failing to honor its terms, including by her failure to pay the Open Account balance.

32. 7-Eleven has been damaged by Ms. Tecleberhan's breaches of the Guaranty in at least the amount of $166,113.91.

**PRAYER FOR RELIEF**

**WHEREFORE**, 7-Eleven requests the following relief against Defendants:

A. That judgment be entered in favor of 7-Eleven and against Noad, Inc. and Meron Tecleberhan for such damages as 7-Eleven has sustained by reason of Noad, Inc.'s and Meron Tecleberhan's breaches of the Franchise Agreement and Guaranty;

B. That judgment be entered in favor of 7-Eleven and against Noad, Inc. and Meron Tecleberhan for the costs and expenses, including reasonable attorneys' fees, incurred by 7-Eleven in connection with this action as provided for by contract; and

C. Such other and further relief as this Court deems just and proper.

DATED: August 13, 2026

Respectfully submitted,

QUARLES & BRADY LLP

By: */s/ Kent Dallow*

Kent Dallow (CO Bar No. 43530)
8744 Kendrick Castillo Way, Suite 560
Highlands Ranch, Colorado 80129
Tel: (303) 268-0066
Fax: (303) 381-9887
Email: kent.dallow@quarles.com

Christian C. Burden
101 E. Kennedy Blvd, Suite 3400
Tampa, Florida 33602
Tel: (813) 387-0300
Email: chris.burden@quarles.com

*Counsel for Plaintiff 7-Eleven, Inc.*